857 F.2d 1469
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
JOHN D. COPANOS & SONS, INC., a corporation; John D.
Copanos; E. Gaye McGraw; Norman V. Ellerton,
individuals, Defendants-Appellants.
 No. 87-1734.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 9, 1988.
Decided: Aug. 9, 1988.
 
 George M. Burditt (Steven M. Kowal, Burditt, Bowles, Radzius & Ruberry, Ltd.; Jerald J. Oppel, Kevin A. Dunne, Ober, Kaler, Grimes & Shriver, on brief), for appellants.
 Kenneth Lewis Jost (John R. Fleder, Director, Office of Consumer Litigation; Lawrence G. McDade, Assistant Director, Office of Consumer Litigation, Civil Division, United States Department of Justice; John R. Bolton, Assistant Attorney General; Thomas Scarlett, Chief Counsel; Eric M. Blumberg, Associate Chief Counsel for Enforcement, Food and Drug Administration, on brief), for appellees.
 Before MURNAGHAN, CHAPMAN and WILKINS, Circuit Judges.
 MURNAGHAN, Circuit Judge:
 
 
 1
 In this appeal, John D. Copanos & Sons, Inc. (Copanos), a manufacturer of pharmaceuticals, seeks an order directing the district court to give it a full evidentiary hearing on its claim that the Food and Drug Administration (FDA) was arbitrary and capricious in refusing to permit the sale of certain lots of injectable drugs held in Copanos' inventory. We conclude, however, that the district judge acted within his discretion and in accordance with a binding Consent Decree in declining Copanos' request for the appointment of a special master, and in declining to afford Copanos an evidentiary hearing. Because the FDA's action was properly evaluated based on the administrative record alone, an evidentiary hearing would serve no purpose; Copanos has not shown evidence of agency bias or prejudgment sufficient to warrant inquiry beyond the agency record. We therefore affirm the judgment of the district court.
 
 I.
 
 2
 Copanos is a Florida corporation located in Baltimore that manufactures prescription human and veterinary drugs, primarily antibiotics. In August, 1984, the Food and Drug Administration inspected the Copanos plant and discovered that Copanos' procedures did not comply with statutory requirements for "current good manufacturing practice" (CGMP). Failings included falsifications and discrepancies in manufacturing records. Under applicable federal statutes and regulations, all raw materials must be carefully accounted for and traced into batches of finished drugs. Any drugs not produced in conformance with CGMP are deemed adulterated even if no flaws are detected in the finished product. 21 U.S.C. Sec. 351(a)(2)(B). In October, 1984, the FDA filed a complaint in federal court for statutory injunctive relief to halt the further manufacture and sale by Copanos of adulterated and misbranded pharmaceutical products.
 
 
 3
 In November, 1984, in order to settle the pending civil action, Copanos entered into a written agreement with the FDA ("1984 Agreement") under which Copanos agreed not to manufacture or ship any drugs until given written notice by the FDA that its operations complied with CGMP. In February, 1985, the FDA inspected the Copanos plant and concluded the company was still not in compliance with CGMP. The FDA provided a list of deficiencies and repeatedly advised Copanos in writing between February and June, 1985, that its operations were out of compliance and that manufacture of injectable products was forbidden under the 1984 Agreement. Only one pilot batch of product was authorized by the FDA. In July, 1985, the FDA learned that between January and June, 1985, Copanos had nevertheless manufactured twenty-three lots of injectable drugs, comprising nearly 1 million vials. The twenty-three lots are among the drugs at issue in the case giving rise to this appeal.
 
 
 4
 In the summer of 1985, the FDA learned that Copanos had shipped several thousand vials of an injectable product to a customer in New Jersey in violation of the 1984 Agreement. Records produced by Copanos in response to FDA investigators' requests concealed the shipment. In July, 1985, Copanos filed a complaint in federal district court alleging that the FDA had breached the 1984 Agreement, violated the equal protection and due process rights of John D. Copanos and his two companies, and defamed John D. Copanos. In an unpublished decision, this Court affirmed the district court's grant of summary judgment to the FDA, finding Copanos' claims "meritless." John D. Copanos & Sons, Inc. v. Bowen, No. 86-2136, slip op. at 3, 5 (4th Cir. Apr. 24, 1987) (per curiam).
 
 
 5
 In August, 1985, the FDA executed a search warrant at the Copanos plant and found:
 
 
 6
 a) Copanos had omitted numerous positive sterility and pyrogen[1] test results from its batch records, filing only negative results;
 
 
 7
 b) One batch record showed a negative sterility test conducted March 18, 1985, while other records showed the raw materials for that batch were not even mixed until March 29, 1985;
 
 
 8
 c) Discrepancies and alterations were present in batch records;
 
 
 9
 d) Test samples of purportedly finished product were sent to a testing facility before the relevant batch was finished by Copanos; and
 
 
 10
 e) Mechanical recording charts used to monitor processing temperatures were not authentic and were apparently drawn by hand.
 
 
 11
 In September, 1985, the district court entered an interim order prohibiting Copanos from making or distributing injectable drugs without prior court permission. On November 5, 1985, Copanos and the FDA entered into a Consent Decree of Permanent Injunction.
 
 
 12
 The Consent Decree specifies, among other things, that Copanos must obtain prior written approval from the FDA in order to distribute any drugs held in the company's inventory as of November, 1985. Paragraph 6 also provides,
 
 
 13
 [i]n the event defendants believe that FDA's decision described in this paragraph is arbitrary and capricious, they may ask the Court to appoint a master pursuant to Rule 53, F.R.Civ.P.
 
 Paragraph 10 provides:
 
 14
 10. All decisions specified in this decree shall be vested in the discretion of FDA which discretion shall be exercised reasonably and promptly. FDA's decisions under this decree shall be reviewed, if necessary, under the arbitrary and capricious standard set forth in 5 U.S.C. 706(2)(A).
 
 The next paragraph provides:
 
 15
 11. That jurisdiction of this Court is retained for the purpose of enforcing or modifying this decree and for the purpose of granting such additional relief as may hereafter appear necessary or appropriate.
 
 
 16
 In March, 1986, Copanos sought FDA permission to distribute twelve partial lots and twenty-three full lots of various injectable veterinary drugs. The lots were manufactured by Copanos between January and June, 1985, in direct violation of the 1984 Agreement but before the Consent Decree was signed. In June, 1986, the FDA refused permission because the lots were adulterated.
 
 
 17
 The FDA denied permission for four reasons: (1) the products in question are labeled "sterile" and are required by law to be sterile, free of pyrogens, and have their contents and manufacturing history accurately documented; (2) Copanos' manufacturing conditions were so deficient as to provide no reasonable assurance that the products were in fact sterile and free of pyrogens, because of violations such as records falsification, missing and false sterility tests, and false temperature recording charts; (3) Copanos' proposal to test samples of finished products to demonstrate compliance is considered scientifically unacceptable by the FDA as a matter of agency policy; and (4) virtually all the lots at issue were made surreptitiously by Copanos in violation of the 1984 Agreement and despite explicit written instructions from the FDA not to manufacture the products. Copanos submitted additional test data for seven of the lots in October, 1986, but after reviewing the data the FDA reconfirmed its decision (also in October, 1986).
 
 
 18
 In July, 1987, Copanos asked the district court to hold an evidentiary hearing and overturn the FDA's denial of permission to ship the lots on the grounds that the denial was arbitrary and capricious. In a memorandum filed August 14, Copanos also asserted that the FDA's decision resulted from bias and prejudgment. The district court denied the motion and Copanos' motion for reconsideration by orders dated September 3 and October 2, 1987, respectively. The district judge stated,
 
 
 19
 The record does not reveal that the Government arbitrarily and capriciously acted; indeed, it would appear that the Government has acted reasonably, whether or not there is any substantive merit to defendants' contentions. Further, it is to be noted that at no time prior to July 7, 1987 have defendants asked this Court to appoint a master, see the November 4, 1985 Consent Decree, paragraph 6, or to afford an evidentiary hearing conducted by the Court or by a master. Rather, on July 7, 1987, long after the Government's October 9, 1986 decision which defendants challenge at this time, defendants seek an urgent, immediate evidentiary hearing by this Court, contending, inter alia: "This court ... has ample authority to review this matter in any manner it sees fit to assure that justice is done." Assuming, arguendo only, that this Court has the authority either itself or through a master to inquire as defendants request, this Court sees no reason so to do.
 
 
 20
 Throughout this litigation defendants have complained in many contexts of arbitrary, capricious and discriminatory conduct by the Government. Each time, including in this instance, this Court has reviewed the record and found an absence of evidence proferred [sic] or given by defendants to support such allegations. In so doing, this Court has, as is appropriate when the very existence of a business enterprise may well be at stake, devoted a great deal of time to conferences, hearings and in-chambers review of records and documents. In that context, this Court is satisfied that defendants have had their day in this Court and that this Court should take no further action herein.
 
 
 21
 United States v. John D. Copanos & Sons, Inc., No. K-85-3356 (D.Md. Sept. 3, 1987) (Memorandum and Order) (Kaufman, J.) (footnote and citation omitted). This appeal followed.
 
 II.
 
 22
 As a preliminary matter, the government has suggested that this case may be moot, depriving us of jurisdiction. All pharmaceutical products have expiration dates, after which the products may not be sold and must be destroyed.[2] All of the drugs at issue in this appeal have already expired except for one lot of iron dextran, which expires in either May or June, 1989. Thus, while the case is not now worth the $6 million that Copanos claimed when first appealing to the district court (in fact, many of the lots had already expired when Copanos first appealed to the district court), the continued viability of that one lot of iron dextran saves the appeal from mootness on expiration grounds.
 
 
 23
 There is another potential mootness problem. Under federal law, a manufacturer may not make or distribute human or animal prescription drugs without an approved application licensing the manufacturer for each such drug. See 21 U.S.C. Secs. 355(a), 360b(a). Copanos currently has no such license to make or distribute drugs, because the FDA withdrew all of Copanos' licenses effective September 8, 1987. See 52 Fed.Reg. 29,274-29,310 (1987).
 
 
 24
 Because Copanos has no effective license, its products may not be lawfully distributed or held for sale regardless of the outcome of this appeal. Such a situation would ordinarily render the case moot. To satisfy both Article III jurisdictional requirements and the more discretionay doctrines of remedial utility and judicial administration, a suit "must remain alive throughout the course of litigation, to the moment of final appellate disposition." 13A Wright, Miller & Cooper, Federal Practice and Procedure Sec. 3533 (1984). The central question is a factual one: "whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." Id. Sec. 3533.3.
 
 
 25
 Copanos has, however, appealed the license revocation to the United States Court of Appeals for the District of Columbia Circuit. See Copanos v. FDA, appeal docketed, No. 87-1464 (D.C.Cir. Oct. 5, 1987). Because Copanos' appeal has not yet been adjudicated, meaningful relief in the present appeal is not necessarily forestalled. We therefore retain jurisdiction and undertake exploration of the merits of the case.
 
 III.
 
 26
 Copanos argues that under a fair interpretation of the Consent Decree, it is entitled to a full evidentiary hearing beyond the agency record by a master or the district court on whether the FDA was arbitrary and capricious. Copanos argues that paragraph six of the Consent Decree (providing that Copanos "may ask the Court to appoint a master" if Copanos believes the FDA was arbitrary and capricious) and paragraph eleven (giving the district court continuing jurisdiction to enforce or modify the injunction) should be read together to require the court to appoint a master if requested and in any event to require the court to consider all available evidence, and not just the administrative record on which the agency based its decision, in a full evidentiary hearing.
 
 
 27
 We see no merit in Copanos' claim that it is entitled to have a master appointed. By its terms, paragraph six merely permits Copanos to "ask" the court to appoint a master--there are no words of command or entitlement in the paragraph. Paragraph six also refers specifically to Fed.R.Civ.P. 53, which explicitly provides that "reference to a master shall be the exception and not the rule." It is well established that while the district court has broad discretion in deciding whether to refer a matter to a master, such references are generally disfavored (and have occasionally been revoked by appellate courts) except where complex or burdensome accounting or auditing is needed. See generally 9 Wright & Miller, Federal Practice and Procedure Secs. 2601-2605 (1971 & Suppl.1987).
 
 
 28
 Copanos bases its argument for considering evidence outside the administrative record on the inclusion of the provision for appointing a master, arguing that a master would not be needed to assist the district court unless the parties contemplated consideration of evidence beyond the agency record. There is no compelling logic in the argument. In a case with a complex, technical, and voluminous administrative record, a court might consider appointing a master to sift through the agency record without contemplating any factual inquiry beyond the record. Absent any provision in the Consent Decree to the contrary, the agency's decision should be reviewed based on the administrative record that was before the agency at the time of decision. See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 419-20 (1971). That rule, which arises from section 706 of the Administrative Procedure Act (APA), is clearly applicable here because paragraph ten of the Consent Decree vests all relevant decisions in the discretion of the FDA, with any necessary review to be done "under the arbitrary and capricious standard set forth in 5 U.S.C. Sec. 706(2)(A) [Sec. 706 of the APA]."[3]
 
 
 29
 Copanos also argues that it was entitled to an evidentiary hearing beyond the agency record because it presented evidence of agency bias and prejudgment. Copanos' claims are based on affidavits filed by various Copanos attorneys asserting that FDA officials exhibited animosity towards Copanos and that agency officials indicated in advance that approvals would not be forthcoming to various Copanos requests. In fact, however, there are FDA letters to Copanos in the record indicating that progress was being made and that certain approvals were likely if certain conditions were met. Copanos also complains that it was required to perform more media fills (processing non-drug substances through the plant's equipment to test sterility and purity) than other manufacturers are usually required to perform in a given year. Based on the extensive record of falsification of records, defective products, and disobedience of FDA orders, we would be surprised if the FDA acted otherwise. Finally, Copanos contends that the FDA's refusal to consider test results from samples of finished products is evidence of bias. In fact, the FDA was merely applying its standard policy, which is based on accepted scientific principles and on the statutory scheme that deems a drug adulterated if process and record-keeping requirements are not met regardless of how the product tests out.
 
 
 30
 Where, as here, "there are administrative findings that were made at the same time as the decision, ... there must be a strong showing of bad faith or improper behavior" before a court may inquire into the motives and mental processes of agency decisionmakers. Overton Park, 401 U.S. at 420. No such showing has been made here.[4]
 
 IV.
 
 31
 Finally, Copanos has asked this Court to remand the case to a different district judge. In its Brief to this Court, Copanos claims that "Judge [Frank A.] Kaufman demonstrated his impatience and unwillingness to conduct the particularized review that is necessary, and Copanos' rights can only by [sic] protected by a hearing before another judicial officer." Appellant's Brief at 36.
 
 
 32
 The request is highly inappropriate. For one thing, Copanos has not asked Judge Kaufman to recuse himself. See 28 U.S.C. Sec. 144. Copanos also has not presented any evidence of bias or prejudice stemming from an extrajudicial source. Dissatisfaction with a judge's rulings is not adequate reason to disqualify the judge from the case. Fitzgerald v. Penthouse International, Ltd., 691 F.2d 666, 672 (4th Cir.1982), cert. denied, 460 U.S. 1024 (1983) (allegations of prejudice and bias involving court's rulings on legal issues insufficient to justify recusal request; bias or prejudice must come from extrajudicial source and affect the judge's opinion on the merits). We would therefore deny Copanos' request even if a remand were necessary.
 
 
 33
 Because we find that Judge Kaufman acted within his discretion and in full accordance with the Consent Decree, and indeed afforded Copanos every opportunity to make its case against the FDA, the judgment of the district court is
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 Pyrogens are waste products of bacteria that may cause or exacerbate fevers in humans and animals
 
 
 [2]
 Copanos suggests that the expiration date "could be extended by further stability testing or otherwise," but the Government asserts that expiration makes the drugs worthless and that expired drugs must be destroyed. Because not all the drugs at issue have reached their expiration date, however, we need not resolve the issue
 
 
 [3]
 Copanos argues that the adoption in paragraph ten of the Consent Decree of the general standard from Sec. 706 of the APA is superceded by a more specific standard of review in paragraph six, so that the FDA decision in this case should be reviewed by the courts de novo on an augmented record without reference to the standards or procedures of the APA. The argument is without merit. Paragraph ten provides that all decisions specified in the Consent Decree are subject to Sec. 706-based review; indeed, paragraph six echoes paragraph ten by providing that Copanos may ask for the appointment of a master if it believes an FDA decision regarding release of drugs from inventory is arbitrary and capricious. There is no indication in the decree that "arbitrary and capricious" means different things in the two paragraphs, and the paragraphs make perfect sense when read together, so there is no need to construe the terms differently
 
 
 [4]
 Copanos argues further that the district court erred in denying an evidentiary hearing because there were disputed issues of material fact, and that the court improperly construed those disputes in the Government's favor. The argument lacks merit because the proceeding below was not brought or defended under Fed.R.Civ.P. 56. The district court was merely asked to review agency action pursuant to the Consent Decree, and the district court correctly reviewed the FDA's decision under Sec. 706 of the APA. In any event, there are no "disputed material facts" requiring such a hearing. The court's review was properly based on the agency record, and Copanos failed to bring forth any evidence of agency bias or prejudgment that would justify an inquiry beyond the record